UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:19-cv-62468-MGC

HOWARD COHAN,

    Plaintiff,

vs.

JERRY'S ARTARAMA SOUTH, INC.,
a Florida profit corporation d/b/a
JERRY'S ARTARAMA; and JERRY'S
ART SUPPLY WAREHOUSE WPB, LLC,
a Florida limited liability company d/b/a
JERRY'S ARTARAMA,

    Defendant.
_____/

## AMENDED COMPLAINT

Plaintiff, HOWARD COHAN ("Plaintiff"), by and through the undersigned counsel, hereby files this Amended Complaint and sues JERRY'S ARTARAMA SOUTH, INC., a Florida Profit Corporation, d/b/a JERRY'S ARTARAMA and JERRY'S ART SUPPLY WAREHOUSE WPB LLC, a Florida Limited Liability Company, d/b/a JERRY'S ARTARAMA (hereinafter collectively referred to as " the Defendants"), for declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

### JURISDICTION AND VENUE

1. This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 343 for Plaintiff's claims arising under Title 42 U.S.C. § 12182 et. seq., based

on Defendant's violations of Title III of the ADA. *See also,* 28 U.S.C. §§ 2201, 2202, as well as the 2010 ADA Standards.

2. Venue is proper in this Court, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(B) and Internal Operating Procedures for the United States District Court For the Southern District of Florida in that all events giving rise to the lawsuit occurred in Broward County, Florida.

## PARTIES

3. Plaintiff, HOWARD COHAN is *sui juris* and is a resident of the State of Florida residing in Palm Beach County, Florida.

4. Upon information and belief, Defendants are the lessee, operator, owner and lessor of the Real Property, which are subject to this suit, and are located at 242 S Federal Hwy, Deerfield Beach, FL 33441 and 2505 Okeechobee Blvd, West Palm Beach, FL 33409, ("Premises"), and are the owners of the improvements where Premises are located.

5. Defendants are authorized to conduct, and are in fact conducting, business within the state of Florida.

6. Plaintiff is an individual with numerous permanent disabilities including severe spinal stenosis of the lumbar spine with spondylolisthesis; severe spinal stenosis of the cervical spine with nerve root compromise on the right side; a non-union fracture of the left acromion (shoulder); a labral tear of the left shoulder; a full thickness tear of the right rotator cuff; a right knee medial meniscal tear; a repaired ACL and bilateral meniscal tear of the left knee; and severe basal joint arthritis of the left thumb. The above listed permanent disabilities and symptoms cause sudden onsets of severe pain and substantially limit Plaintiff's major life activities. As a result of these medical conditions Plaintiff's suffers body weakness, numbness, mobility

limitations, abnormal gate, and abnormal balance. Additionally, his ability to sit, stand, lift, reach, grasp, bend, stretch, and twist, among other activities of daily living, are all substantially restricted.

7. At the time of Plaintiff's visit to the Premises on September 11, 2016, September 13, 2016, September 16, 2016, March 24, 2017, July 12, 2018, September 19, 2018, November 14, 2018, and August 24, 2019 (and prior to instituting this action), Plaintiff suffered from a "qualified disability" under the ADA, and required the use of fully accessible and properly marked parking for individuals with disabilities, fully accessible restrooms and fully accessible paths of travel throughout the facility. Plaintiff personally visited the Premises, but was denied full and equal access and full and equal enjoyment of the facilities and amenities within the Premises, even though he would be classified as a "bona fide patron". A true and correct copy of Plaintiff's receipts from each and every visit are attached as Composite Exhibit 1.

8. Plaintiff, in his individual capacity, will absolutely return to the Premises and avail himself of the services offered when Defendants modify the Premises or modify the policies and practices to accommodate individuals who have physical disabilities.

9. Plaintiff is continuously aware of the violations at Defendants' Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

10. Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendants' discrimination until Defendants are compelled to comply with the requirements of the ADA. Plaintiff's abnormal medical conditions and resulting disabilities as listed in Paragraph six (6) of this Amended Complaint restrict Plaintiff's ability to grasp, apply pressure and maintain balance to open doors, maintain balance while approaching and standing

in front of a sink and/or urinal, reaching to use dispensers located throughout restrooms, sitting onto and standing up from toilets (and requiring grab bars for the use of same), require Plaintiff to need additional clearance surrounding elements in restrooms, and otherwise affects Plaintiff's ability to enjoy places of public accommodation such as Defendant's premises.

11.     Plaintiff would like to be able to be a patron of the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendants' discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discrimination against persons with physical disabilities.

12.     Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits, Plaintiff also intends to visit the Premises regularly to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Premises, encountered barriers to access at Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will

continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein. It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

13. Plaintiff, in his capacity as a tester, will absolutely return to the Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

14. In fact, Plaintiff has already returned since the filing of Plaintiff's original complaint to Defendant's Premises at 242 S Federal Hwy, Deerfield Beach, FL 33441 on November 25, 2019. Again, Plaintiff personally visited this premises, but was denied full and equal access and full and equal enjoyment of the facilities and amenities within the premises, even though he would be classified as a "bona fide patron".

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

15. Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 14 above as if fully stated herein.

16. On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. § 12182; 28 C.F.R. § 36.508(a).

17. Congress found, among other things, that:

a. some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b. historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c. discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

d. individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

e. the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and accosts the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3),(5) and (9).

18. Congress explicitly stated that the purpose of the ADA was to:

    a. provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

    b. provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

U.S.C. § 12101(b)(1)(2) and (4).

19. Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

20. Defendants have discriminated and continue to discriminate against Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv).

21. Plaintiff has visited Premises, and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

22. Plaintiff would like to return, and has already returned to the Deerfield Premises, to enjoy the goods and/or services at Premises on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so without encountering further barriers by the Defendant's failure and refusal to provide disabled persons with full and equal access to their facilities.

Therefore, Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

23. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Officer of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36 and its successor the 2010 ADA Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. § 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for and subsequent violation.

24. Based on a preliminary inspection of the Premises, Defendants are in violation of 42 U.S.C. § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and are discriminating against Plaintiff as a result of, inter alia, the following specific violations:

**Jerry's Artarama Okeechobee**

**Men's Restroom**

a. Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§309, 309.1, 309.3, 309.4 and 308. (This has to do with Mr. Cohan's back and shoulder injuries and the lock needs to be at a proper height in order for him to avoid unnecessarily straining to use the dispensers or the operable part thereof that is not at a correct height.)

b. Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§609, 609.1 and 609.3. (Mr. Cohan requires the use of grab bars for assistance in getting onto and off of the water closet due to his back and knee injuries. As such, Plaintiff requires these grab bars

  to be unobstructed by protruding objects, particularly given his hand and shoulder injuries.)

c. Providing grab bars of improper horizontal length or spacing as required along the rear or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1 and 604.5.2. (Mr. Cohan requires the use of grab bars for assistance in getting onto and off of the toilet due to his back and knee injuries. If these grab bars are not in the proper position, it would result in unnecessary strain due to his hand and shoulder injuries.)

d. Failure to provide grab bars at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§609, 609.4 and 609.7. (Mr. Cohan requires the use of grab bars for assistance in getting onto and off of the toilet due to his back and knee injuries. If these grab bars are not in the proper position, it would result in unnecessary strain due to his hand and shoulder injuries.)

e. Failure to provide flush controls located on the open side of the water closet in violation of 2010 ADAAG §§309, 309.4, 604 and 604.6. (Mr. Cohan requires the proper placement of flush controls. Improper placement of these flush controls causes disabled individuals such as Mr. Cohan to have to reach across the toilet to flush, causing Mr. Cohan unnecessary strain on his back, legs and shoulder.)

f. Failure to provide the water closet seat at the correct height above the finished floor in violation of 2010 ADAAG §§604 and 604.4. (Mr. Cohan requires the use of grab bars to get on and off of the toilet due to his back and knee injuries. If the

      toilet is not at the proper height, then he cannot use the grab bars and causes strain to his shoulder, back, knees and/or legs.)

g. Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.4 and 404.2.4.1. (Due to Mr. Cohan's hand, shoulder and back injuries, he utilizes the wall or barriers for leverage to open the door. When there is insufficient maneuvering clearance, disabled people such as Mr. Cohan are unable to do so.)

h. Failure to provide paper towel dispenser at the correct height above the finished floor in violation of 2010 ADAAG §§606, 606.1 and 308. (This has to do with Mr. Cohan's back and shoulder injuries and the dispenser needs to be at a proper height in order for him to avoid unnecessarily straining to use the dispensers or their operable parts that are not at a correct height.)

**Jerry's Artarama Deerfield (updated following November 25, 2019 visit)**

**Unisex Restroom**

a. Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4. (As a result of Mr. Cohan's shoulder, back, and hand injuries, doors with excessive pressure cause undue strain and potential injury)

b. Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5. (Exposed plumbing and sharp objects are a safety concern

    particularly given approach to the sink by disabled individuals such as Mr. Cohan)

c. Failure to provide paper towel dispenser at the correct height above the finished floor in violation of 2010 ADAAG §§606, 606.1 and 308. (This has to do with Mr. Cohan's back and shoulder injuries and the dispenser needs to be at a proper height in order for him to avoid unnecessarily straining to use the dispensers or their operable parts that are not at a correct height.)

d. Providing grab bars of improper horizontal length or spacing as required along the rear or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1 and 604.5.2. (Mr. Cohan requires the use of grab bars for assistance in getting onto and off of the toilet due to his back and knee injuries. If these grab bars are not in the proper position, it would result in unnecessary strain due to his hand and shoulder injuries.)

e. Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2. (Mr. Cohan requires the use of grab bars to get on and off of the toilet due to his back and knee injuries. If the toilet is not in the proper position from the wall, then he cannot use the grab bars and causes strain to his shoulder, back, knees and/or legs.)

f. Failure to provide the water closet seat at the correct height above the finished floor in violation of 2010 ADAAG §§604 and 604.4. (Mr. Cohan requires the use of grab bars to get on and off of the toilet due to his back and knee injuries. If the toilet is not at the proper height, then he cannot use the grab bars and causes strain to his shoulder, back, knees and/or legs.)

    g. Failure to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1. (Without proper signage, accessible restrooms are hard to locate and can confuse individuals with disabilities.)

    h. Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2 (Mr. Cohan's back and knee injuries require clearance under the sink to maintain balance while approaching and standing in front of a sink)

25. To the best of Plaintiff's belief and knowledge, Defendants have failed to eliminate the specific violations set forth in paragraph 22 herein.

26. Although Defendants are charged with having knowledge of the violations, Defendants may not have actual knowledge of said violations until this Complaint makes Defendants aware of same.

27. To date, the readily achievable barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

28. As the owner, lessor, lessee or operator of the Premises, Defendants are required to comply with the ADA. To the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable, as required by 28 C.F.R. §36.402.

29. To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993 the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

30. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by Defendants, pursuant to 42 U.S.C. § 12205.

31. All of the above violations are readily achievable to modify in order to bring Premises or the Facility/Property into compliance with the ADA.

32. In instance(s) where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 22 herein can be applied to the 1991 ADAAG standards.

33. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an order to alter the subject facility to make them readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Subject Facility until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1. That this Court declares that Premises owned, operated and/or controlled by Defendants are in violation of the ADA;
2. That this Court enter an Order requiring Defendants to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;
3. That this Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendants to undertake and complete corrective procedures to Premises;

4. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff; and,
5. That this Court award such other and further relief as it may deem necessary, just and proper.

Dated December 13, 2019.

        **The Law Office of Gregory S. Sconzo, P.A.**
        5080 PGA Boulevard, Suite 213
        Palm Beach Gardens, FL 33418
        Telephone: (561) 729-0940
        Facsimile: (561) 491-9459

        By: **/s/ Gregory S. Sconzo**
        GREGORY S. SCONZO, ESQUIRE
        Florida Bar No.: 0105553
        **Service Email:** sconzolaw@gmail.com
        **Primary Email:** greg@sconzolawoffice.com
        **Secondary Email:** sarah@sconzolawoffice.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 13, 2019, a true and correct copy of the foregoing was served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record on the below Service List.

        *s/ Gregory S. Sconzo*
        Gregory S. Sconzo, Esq.

## **SERVICE LIST**

WILLIAM G. SALIM, JR.
Florida Bar No. 750379
MOSKOWITZ, MANDELL, SALIM &
SIMOWITZ, P.A.
Attorneys for Defendants
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida 33334
Telephone: (954) 491-2000
Facsimile: (954) 491-2051
E-mail: wsalim@mmsslaw.com
Attorney for Defendant